That Charles Lewis duly made his last will and testament on the 21st September, 1779, wherein, after sundry devises and dispositions of his property, the will proceeds, as follows: "My will and desire further is that on the death of my wife, all the rest and residue of my estate not herein otherwise disposed of, may be divided into eight equal parts or portions, and one of those parts or portions I give, devise, and bequeath to each of my sons and daughters, respectively, or their heirs, viz.: John Lewis, Charles Lewis, and Howel Lewis, Robert Lewis, Elizabeth Shannon, Ann Taylor, and Frances Lewis, and the other eight part or portion thereof to the sons and daughters of my son James Lewis, deceased, and to their heirs or legal representatives, respectively." The appointment of executors then follows. The testator died on the day of _________, 17__, and the will was admitted to probate on the 21st December, 1779. That Robert Lewis, on the ______ day of ___________, (132) 1779, intermarried with Frances Lewis, daughter of the testator, Charles; that on the 2d September, 1780, the said Robert Lewis made his last will and testament, wherein (inter alia) he directs that all his personal property be equally divided among his wife and children; his wife's proportionable part to be for her use during her natural life, and to be disposed of by her in any manner she should think proper during that period, to such of his children as she pleased, and then each child's part to be to them and their heirs forever. That the said Robert Lewis died on the ______ day of _________, 1780, and afterwards, on the ______ day of __________, 1782, Mary Lewis, widow of Charles Lewis, died; upon whose death the executors of Charles proceeded to make a division of the negroes and other estate bequeathed by his will, and the part allotted to Frances Lewis in the said will was set apart, in which were contained the negroes specified in the declaration, and that the said Frances then took them into possession, with the consent of Charles Lewis' executors. That on the ____ day of May, 1790, the said Frances Lewis, having been in possession of the said negroes from the time of the division, and being then in the possession of them, intermarried with the plaintiff, Thomas Hynes, and on the 10th October, 1790, the said Frances died, the said Thomas Hynes having a continual and *Page 123 
uninterrupted possession of the negroes from the time of his marriage until his wife's death. That in 1792, the said Thomas Hynes delivered all the said negroes to Robert Lewis' executors, for the use of Robert's children, but without prejudice to his, Thomas Hynes' right, in which manner the said executors accepted them, and that afterwards, and before the institution of the suit, Thomas Hynes demanded the said negroes from the executors, who refused to deliver them; upon the whole, etc.
This case was fully argued by Potter for the plaintiff and Norwood for the defendant; but as the principal points relied upon are noticed in the opinion of the Court, their arguments are omitted. After time taken for deliberation,
It is found by the special verdict that in the year 1782, upon on the death of Mary Lewis, widow of Charles Lewis, a division was made of the negroes bequeathed by Charles, and that those mentioned in the declaration were allotted to Frances Lewis, then a widow, who immediately took them into possession. That in May, 1790, being so possessed, she intermarried with Thomas Hynes, the plaintiff, who likewise became possessed of the negroes, and that in October, 1790, Frances, then Frances Hynes, died. It is further found that in 1792 the plaintiff delivered the negroes to the defendants, but without prejudice to his right, and that in 1793 they refused to deliver them when demanded by him. So far the plaintiff's title is unattended with any difficulty.
But the defendants say that Charles Lewis, having bequeathed the ulterior remainder in these negroes to his daughter, Frances, during her coverture with Robert Lewis, their testator, and the said Charles Lewis having also died during the coverture, the title became vested in Robert immediately upon the assent of the executors, and of course transmissible to his representative.
The question, therefore, for the opinion of the Court is whether Robert Lewis did become entitled to these negroes, without having reduced the same into his possession during the coverture. It may be premised that, as negroes are considered by our law personal property, and as that is governed by certain general rules, in regard to its division, succession, and the rights that men may hold in it, this species of it, in common with every other, must necessarily be obedient to the like principles. Whatever necessity there may be that this sort of property should be regulated in a manner peculiar to itself, or that questions concerning it should be determined with a view to the exigency of men's affairs; yet *Page 124 
it is obvious that such alterations, accommodated to the nature of the property and the circumstances of the country, can only be made by legislative authority. In the discussion of legal rights, courts of law are bound to apply strict legal principles, and the hardship in a (134) particular case must be overlooked, in the greater benefit resulting to the community, when certain known rules are made the test of men's rights, instead of suffering them to fluctuate in the dangerous uncertainty of private speculation.
The rule of law which ascertains what property the husband acquires by marriage is so clear and well settled that no difficulty could arise from it in the present case; but the argument has turned upon the application of that rule to property circumstanced like the present. That rule declares that the personal property of the wife in possession becomes, by the marriage, absolutely vested in the husband; that the personal property of the wife in action does not vest in the husband, unless he reduces it into possession during the coverture. If he dies without doing so, and the wife survives, it is absolutely hers; if she dies, he has no other method of deriving benefit from such property, than by taking out letters of administration. Co. Litt., 351, a. Hence it is important to ascertain the respective boundaries of what is termed property in possession, and property in action; especially as it is argued for the defendant that choses in action, strictly speaking, must be confined to debts upon bond, contract, and the like; to damages for the nonpayment of a debt, or the specific debt itself, excluding by this definition goods, plate, deeds, and writings, as well as negroes.
All personal property is divided into things in possession, and things in action; the first corresponding with the jus in re, the latter with thejus ad rem of the civil law. Things in possession are used in contradiction to such as are not in actual enjoyment, and which, to become so, must be recovered by suit, whether they consist of money or specific chattels. Thus it is said in 2 Blacks., 439, "Chattels personal or choses in possession, as money, jewels," etc. Consequently, if this money or these jewels were not in possession, they would be chattels personal or choses in action; accordingly, an action of debt was anciently brought to recover a specific chattel, as well as a certain sum of money; (135) the only difference being that the defendant was charged in one case with owing, in the other with detaining; and the action was equally maintainable, whether a chattel was bailed to a defendant, who refused to restore it, or whether a man had contracted to deliver a specific chattel, Gilbert's Action of Debt, 400. The same division of chattels in possession and chattels in action is recognized in Roll., 342, and 4 Rep., 65. It seems, therefore, that when a person's deeds or goods, *Page 125 
and consequently negroes, are in the possession of another, and he can only be restored to them by suit, he has a chose in action, precisely to the same extent as if his demand arose from a bond or promissory note.
The argument that these negroes were vested in Frances Lewis during the coverture, and were therefore transmissible to Robert's representatives, is fallacious; for money in the hands of a trustee for a feme covert is vested in her; yet if the husband dies without disposing of it, it survives to her. 1 Vern., 161. Rent that accrues during the coverture, upon a lease made by the husband and wife of the wife's land, is vested in her; yet she shall have it, if she survives her husband. 1 Roll., 350. Many interests may be vested in the wife, which, nevertheless, do not belong to the husband; to complete his title, there must be a vesting in possession, as well as in interest. In this respect, the subject bears some analogy to a case of real property, where a remainder in fee is limited to a feme covert
after an estate for life; during the particular estate it is vested in her and is transmissible to her heirs; but if the particular tenant survives the wife, the husband shall not be tenant by the curtesy for want of a seizin in fact.
All that vested in Frances, during the coverture, was an undivided eighth part of Charles Lewis' negroes after the death of his widow; of what negroes this part should consist was not ascertained until the division, which took place after Robert's death; so that, in fact, until that time, no specific negroes vested in Frances. She had a claim upon theresiduum, which, it is true, the widow of Charles Lewis could not defeat by any act of hers, and so far her right was vested; yet this is rather an equitable than a legal right, for the protection of which (136) in a court of law, during the life of the widow, it would be difficult to devise an adequate remedy. Considered as a trusted for Frances, she might have been compelled, in a Court of Equity, to deliver in an inventory of the property, whereby it might be secured against any disposition of hers calculated to defeat the remainder; but no case has occurred where such a right as this has been asserted in a court of law during the life of the first taker. 2 Fearne, 46. Then, the claim of the defendants amounts to this; that the wife, during the coverture, became entitled to an equitable right in remainder, to an undivided eighth part of Charles Lewis' estate; that the husband, their testator, neither did nor could reduce the same into possession, during the coverture, and that he died without making any assignment of it, his wife surviving him. Now chattels of a mixed nature, partly in possession and partly in action, which happened during the coverture, the wife shall have, if she survives. Co. Litt., 351, a. The law is the same, if she becomes entitled to a distributory share of an intestate's estate which, never *Page 126 
having been reduced into possession by the husband, survives to the wife. Shower, 25. The reason of those cases would seem to apply with more effect to the present one, which is the claim of a mere possibility.
Some of the cases which have been cited for the defendant shall now be briefly noticed, and an attempt made to point out wherein they appear to us defective in their application. By the case of Cary v. Taylor, in 2 Vern., 302, it is to be observed that nothing is decided. The question was whether a distributory share should be considered as an interest vested, so as to belong to the husband, though his wife dies before an actual distribution, and he dies without administering upon her effects; and for the administrator of the husband it was argued that it should be considered as a legacy assented to, and consequently vested in the husband, without administering to his wife. In this latter case the husband survived the wife, a circumstance which rendered his claim to the distributory share subject to the operation of principles (137) inapplicable to the present case. The husband has a prior right to administer upon his deceased wife's effects, and is not compellable to distribute them, as other administrators are, but is entitled to the wife's choses in action, when recovered, for his own benefit. This was declared to be the law by the Stat., 29th Car., 2, although before that time, doubts were entertained respecting it. Now, as the right to administer follows the right to the property, it is, of course, transmissible to the husband's next of kin, and the administrator de bonisnon of the wife is considered as a trustee to him. Co. Litt., 351. And in conformity to this rule, the consequences that respectively follow, from the husband's surviving the wife or otherwise, are exemplified in the two cases of Fowke v. Leven, 1 Vern., 88, and Pheasant's case, 2 Vent., 340. But in the case under consideration, Frances Lewis, by surviving her husband, became entitled to her own choses in action which he had not reduced into possession. The case of Packer v. Windham, Finch's Rep., is where money and jewels belonging to the wife were laid hold of by the court of chancery during the coverture as a caution or pledge, till the husband made a provision for his wife. The husband died first, and afterwards the wife without issue, and it was resolved that the money belonged to the husband. But that this decision was to conform to the established principle that the wife's choses in action should belong to the husband only when reduced by him into possession, is manifest from the reasoning of the Court; for they consider that the money was always in the husband's possession, and as only remaining in Court, subject to the wife's equitable claims. The only thing proved by the case of Molesworth v. Molesworth, 3 and 4 Brown's Rep., is that *Page 127 
where there is a devise to trustees to pay to one for life and then to pay a legacy to another, the latter is a vested legacy and transmissible. It may be vested and, of course, transmissible, but to belong to the husband it must, as has been observed, be vested in possession. The cases cited from 1 Atkyns, 458, and 1 Peere Will., 378, do not apply in a different manner from those already observed upon, except that by the first it is admitted that a legacy unreceived during the coverture (138) is a chose in action which the husband may recover and enjoy by administering to his wife.
Upon the whole, we are of opinion, from the consideration we have been able to bestow on this case, that the plaintiff is entitled to recover. But as Judge WILLIAMS, who is now absent by reason of sickness, does not coincide with us, and as it is a case of great concern to the parties, upon the points of which we are not aware that any determination has taken place, we think it better that the judgment should be postponed to the next term in order that a case which is likely to settle an important rule of property may be decided with all the advantage it can derive from a more deliberate examination.
NOTE. — See Lewis v. Hynes, 2 N.C. 278, and the note thereto; also Neale v. Haddock, 3 N.C. 183, and the cases referred to in the note to that case, which establish the law to be, that where a wife has a remainder in slaves, and the husband dies during the coverture and before the slaves have been reduced into possession, the slaves shall belong to the wife instead of going to the husband's representatives.
Cited: Johnston v. Pasteur, post, 582; Kornegay v. Carroway, 17 N.C. 405;Whitehurst v. Harker, 37 N.C. 293.
(139)